**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JOSEPH MRAZEK,              :     Civil Action No.: 13-1091(FLW)

              Plaintiff,     :            **OPINION**

           vs.                :

STAFFORD TOWNSHIP, _et al._,   :

           Defendants.    :

_____ :
                                :

DREW SMITH and DAVID LEVI
MCVEY,                    :

            Plaintiffs,    :     Civil Action No.: 14-5945(FLW)

           vs.                :

STAFFORD TOWNSHIP, _et al._,   :
           Defendants.
_____ :

**<u>WOLFSON, United States District Judge:</u>**

      Plaintiff-Officers Joseph Mrazek, Drew Smith and David Levi McVey (collectively, "Plaintiffs"), were all candidates who sat for the 2013 Stafford Township Sergeants Promotional Exam ("Exam"), and they brought the above-captioned cases[1] to challenge the procedures utilized by Stafford Township (the "Township") in connection with the Exam. Plaintiffs accuse the Township and

_____

[1]    These two captioned-cases were consolidated for the purposes of discovery.

Police Chief Joseph Giberson ("Chief Giberson")(collectively, "Defendants") of violating Plaintiffs' procedural and substantive due process rights by manipulating the Exam scores such that each of the plaintiffs was not promoted. In addition, Officer Mrazek claims that he was unfairly targeted by Defendants during the Exam's evaluation because of his union participation, in violation of the First Amendment.   Presently, because the legal and factual issues are similar, Defendants, in one omnibus motion, move for summary judgment on all counts asserted in both cases.   For the reasons set forth herein, Defendants' motion is **GRANTED** in part and **DENIED** in part.   In particular, summary judgment is granted as to the due process claims asserted by plaintiffs Smith and McVey; their Complaint is dismissed in its entirety.   Defendants' motion is granted as to plaintiff Mrazek's due process claims in Counts I and II of his Complaint; however, summary judgment is denied as to Mrazek's First Amendment claims in Counts III and IV.

Defendants are directed to submit supplemental briefing on qualified immunity within 10 days from the date of the Order accompanying this Opinion. Mrazek may respond within 10 days after receiving Defendants' submission.   On the issue of Chief Giberson's authority under state law as a policymaker for *Monell* purposes, Mrazek is directed to submit supplemental briefing within 10 days from the date of the Order accompanying this Opinion.   Defendants also have 10 days to respond after receiving Mrazek's submission.

**BACKGROUND**

For the purposes of this motion, I will only recount the following relevant facts, and they are undisputed unless otherwise noted.  In late 2012, the Township, through its Police Department, administered a promotional examination for its police officers, to determine which officers would be appointed to the rank of sergeant.  Defendants' Statement of Undisputed Facts ("Defs' Facts"), ¶ 5.  In August 2012, Chief Giberson implemented the evaluation and structure of the Exam. The Exam Policy was subsequently approved by the Mayor and Council through Resolution 2012-219.  *Id.* at ¶¶ 7, 8.  In addition to the approval, the Council authorized the execution of a contract with the International Association of Chiefs of Police ("IACP") for the express purpose of administering the Exam to the applicants.  *Id.* at ¶ 10.

The Exam consisted of two phases, Phase I and Phase II.  Defs' Facts, ¶ 12.  Phase I comprised of multiple choice questions prepared and graded by the IACP, and it accounted for 35% of the total exam score.  *Id.* at ¶¶ 13-15.  A candidate's seniority contributed to 10% of the total score.  In that regard, half of the candidate's seniority score was added in Phase I.  *Id.*  According to the Exam Policy, the top 50% of the candidates in Phase I would proceed to Phase II.  *Id.* at ¶ 17.

Phase II included two sections: assessment center and evaluation. The assessment center, also referred to as "in-basket" section, contained situational questions that required the candidates to give written responses, and a subsection in which the candidates must provide verbal responses to questions

3

and situations.  *Id.* at ¶ 19.  The "in-basket" section accounted for 35% of the total exam score.  *Id.*  This portion of the Exam was also prepared and graded by the IACP.  In addition, in Phase II, the other half of a candidate's seniority score was added to the total score.  The remaining 20% of the Exam was the subjective evaluation section, which consisted of two portions: the "Supervisory Recommendation" or "Supervisors Roundtable", and the "Chief's Review."  *Id.* at ¶ 20.  Each of these portions accounted for 10% of the total score. *Id.*  More specifically, during the Supervisors Roundtable, each candidate, who advanced to Phase II, was evaluated by all of the superior officers, and these evaluating officers considered each candidate's entire career with the Stafford Township Police Department.  *Id.* at ¶ 21.  The Chief's Review was an evaluation conducted solely by Chief Giberson.

On October 18, 2012, Officers Mrazek, Smith and McVey, along with thirteen other officers, sat for Phase I of the Exam.  *Id.* at ¶ 22; Plaintiffs' Statement of Undisputed Material Facts ("Plts' Facts"), ¶ 25.        After   only the written portion of the Exam (without adding the seniority score), there were two ties, i.e., for first place and seventh place.  According to Defendants, because of these two ties, Chief Giberson decided to treat tie scores "as one ranking space," and therefore, eleven candidates — instead of eight —advanced to Phase II.  Defs' Facts, ¶ 25.

The results of Phase I (written + seniority scores) were as follows:

| Rank | Name | Rank | Name |
|------|------|------|------|
| 1. | **Mrazek** | 9. | Costello |
| 2. | Sichiattarella | 10. | Haldenwang, J |
| 3. | McKenna | 11. | Woodring |
| 4. | **McVey** | 12. | Schweigart |
| 5. | **Smith** | 13. | Sutter |
| 6. | Allikma | 14. | Mauro |
| 7. | Conforti | 15. | Sinopoli |
| 8. | Fessler | 16. | Haldenwang, A |

Plts' Facts, ¶ 25.  The top eleven of these candidates advanced to Phase II. [2]

On January 8, 2013, the IACP conducted the "in-basket" portion of the Exam.  Defs' Facts, ¶ 23.  The results of this section were combined with the remaining half of the eleven candidates' seniority scores.  Plts' Facts, ¶ 40.  At this point, 80% of the Exam had been completed.  The candidates were ranked as follows:

Name and Ranking after the Assessment Center

1. **Mrazek**
2. Schiattarella
3. Allikmaa
4. **McVey**
5. Conforti
6. McKenna
7. **Smith**
8. Haldenwang, J.
9. Fessler
10.   Costello

*Id.* at ¶ 41; Defs' Facts, ¶ 41.

---

[2]   As will be explained more fully *infra*, Plaintiffs take issue with Chief Giberson's decision to allow 11 candidates to advance, particularly since Hadlenwang, J., who was ranked 10th, was one of the candidates who rather than 8 was ultimately promoted.

Two days after the assessment, the Supervisors Roundtable section of the Exam took place.   During the Roundtable, each supervisory staff member submitted his/her individual recommendation for each candidate on various categories.   Plts' Facts, ¶ 43.   Pursuant to the Exam Policy, the evaluators also convened a roundtable discussion regarding the candidates' qualifications.   *Id.* at ¶ 44.   After all the candidates were evaluated, each evaluator ranked the candidates, and those rankings were converted to scores that were then added to the applicants' total scores.   *Id.* at ¶ 45.   I note that Plaintiffs take issue with the manner in which this portion of the Exam was conducted; in particular, Mrazek, who was the President of the Township's local Police Benevolent Association Union ("PBA"), alleges that certain supervisors present at the Roundtable, including Chief Giberson, sought to negatively influence other evaluators' personal rankings of Mrazek, because of these supervisors' attitude towards Mrazek's union membership.   Indeed, Mrazek's First Amendment claims arise out of these allegations.   Instead of summarizing the facts surrounding this issue here, I will further discuss them in detail, *infra*.

The following table represents the results of the Supervisors Roundtable Section:

| Rank | Name |
|------|------|
| 1. | Schiattarella |
| 2. | Allikmaa |
| 3. | Haldenwang, J. |
| 4. | Costello |
| 5. | McKenna |
| 6. | Conforti |
| 7. | Woodring |
| **8.** | **Smith** |

**9.**          **McVey**
10.          Fessler
**11.**          **Mrazek**

Plts' Facts, ¶ 104.

The above-results were then added to the total scores.  At the end of the

Roundtable, with only the Chief's Review left in the Exam, the ranking of the

Officers was as follows:

| **Rank** | **Name** |
|---|---|
| 1. | Schiattarella |
| 2. | Allikmaa |
| **3.** | **Mrazek** |
| 4. | Haldenwang, J. |
| 5. | Conforti |
| 6. | McKenna |
| **7.** | **McVey** |
| 8. | Costello |
| **9.** | **Smith** |
| 10. | Fessler |
| 11. | Woodring |

*Id.* at ¶ 105.

Finally, the Chief's Review was conducted.  According to the Policy, Chief

Giberson would consider the following factors in evaluating each candidate's

qualifications: 1) performance evaluations from the three years prior to the exam;

2) education, and specifically credits earned from an accredited institute of

higher education; 3) awards and commendations for the officer's entire career;

4) firearms scores from the officer's entire career; 5) fitness indicator test scores

from the officer's entire career; 6) the candidate's work ethic, job attitude,

disciplinary record and leadership qualities over their entire career.  *See* Exam

Policy, Sec. (B)(2).   According to Plaintiffs, Chief Giberson did not give due consideration to these factors when he made his assessments, particularly as to Mrazek.   And, Mrazek claims that there were inconsistencies between the assessment that Chief Giberson made during the Supervisors Roundtable and the Chief's review that demonstrate manipulation.   Those facts will also be discussed, *infra*.

The following chart is the ranking of candidates as a result of Chief Giberson's review.

| **Rank** | **Name** |
|----------|----------|
| 1. | Allikmaa |
| 2. | Haldenwang, J. |
| 3. | Costello |
| 4. | McKenna |
| 5. | Schiattarella |
| 6. | Conforti |
| **7.** | **Smith** |
| 8. | Woodring |
| 9. | Fessler |
| **10.** | **McVey** |
| **11.** | **Mrazek** |

Plts Facts, ¶ 135.

Following the Chief's Review, the overall results of the Exam were as follows:

| **Rank** | **Name** |
|----------|----------|
| 1. | Schiattarella |
| 2. | Allikmaa |
| 3. | Haldenwang, J. |
| 4. | McKenna |
| 5. | Conforti |
| 6. | Costello |
| **7.** | **Mrazek** |
| **8.** | **McVey** |

**9.**          **Smith**
10.          Fessler
11.          Woodring

*Id.* at ¶ 136.   Four officers were promoted from the list: Schiattarella, Allikma, Haldenwang and Conforti.[3]   *Id.* at ¶ 146.

On February 8, 2013, pursuant to the Exam Policy, Mrazek submitted an appeal of his exam score to Chief Giberson.   *Id.* at ¶ 142.   Thereafter, Chief Giberson informed Mrazek that he reviewed Mrazek's Exam scores, and concluded that the scores would not be changed.   Defs. Facts, ¶ 143.

In February 2013, Mrazek filed his Complaint, Civil Action No.: 13-1091(FLW), to challenge the manner in which Defendants conducted the Exam. Plaintiffs Smith and McVey followed with their own Complaint, Civ. Action No. 14-5945(FLW), in September 2014.   Both Complaints assert substantially the same causes of action.   In Counts I and II of both Complaints, Plaintiffs assert a § 1983 claim for violation of due process rights under the Fourteenth Amendment against the Township and Chief Giberson, respectively.   In addition, in Counts III and IV of Mrazek's Complaint, he asserts a § 1983 First Amendment claim against the Township and Chief Giberson, respectively.   In those two counts, Mrazek alleges that by failing to promote him, Defendants retaliated against Mrazek for engaging in union activities.   Because the legal and factual issues are similar, Defendants, in one omnibus motion, move for summary judgment on all counts in both Complaints.   Plaintiffs have also filed an omnibus

---

[3]      Although McKenna's scores were higher than Conforti, McKenna was not promoted because he faced discipline for allegedly making sexually offensive comments.

opposition brief.  Accordingly, it is appropriate to decide Defendants' summary judgment motion on both cases in this Opinion.

## DISCUSSION

### I.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ .P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the

moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof

11

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## II.   Due Process

### A. Procedural Due Process[4]

Plaintiffs, collectively, allege in both Complaints that the manipulation of the Exam at the hands of Chief Giberson and the Township violated their procedural and substantive due process rights under the Fourteenth Amendment.  Although not entirely relevant to this Court's determination of the legal issues raised by these constitutional claims, I will briefly summarize Plaintiffs' theory of the case in this regard.   First, Plaintiffs' procedural due process claims rest — albeit erroneously — on their insistence that they have a "property interest" in being promoted in a "fair, timely, and beneficial manner." Pl's Opp. Brief, p. 7.  In that connection, Plaintiffs argue that Defendants violated their property rights by failing to adhere to Stafford Township Resolutions, which adopted the Exam Policy, and improperly injecting Defendants' own personal

---

[4]      While Counts I and II are both brought under 42 U.S.C. § 1983, Count I separately alleges *Monell* liability against the municipal defendant based on the same underlying due process violations alleged in Count II, i.e., right to be promoted fairly.  Under *Monell*, "a municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation." *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 282-83 (3d Cir. 2006). In that connection, *Monell* liability would attach only when a constitutional injury occurs.  *Id.* at 283.  Accordingly, the Court's analysis of both Counts I and II turns on whether Plaintiffs have sufficiently established the underlying violation of their Fourteenth Amendment due process rights. *See id.*  Because, as discussed below, I find that Plaintiffs fall short of showing that a due process violation occurred in the first instance, it is not necessary for me to address the existence of a "policy or custom" under *Monell*.

biases against Plaintiffs in an effort to manipulate the exam scores. In particular, Plaintiffs accuse Defendants of violating Stafford Township's policy by permitting 11 applicants to proceed to Phase II from Phase I, instead of the 8 proscribed by the policy. Moreover, in Phase II, Plaintiffs complain that (1) contrary to the Exam Policy, the supervising officers, during the Roundtable, created their own scoring system; (2) false information regarding Plaintiff Smith was provided during the Roundtable portion; (3) supervisory officers failed to include a particular Plaintiffs' supervisor, Sgt. Linck, to participate at the Roundtable discussion; [5] and (4) supervisory officers used Plaintiff Mrazek's union membership/activities as reasons to lower his scores. Plaintiffs further take issue with Chief Giberson's review; they essentially accuse the Chief of ignoring the dictates of the Exam Policy by failing to adhere to the required criteria when making each candidate's individual assessment. Plaintiffs allege that all these efforts were made aggregately to manipulate the exam scores such that Plaintiffs would not be promoted.

Over all, Plaintiffs, in their submissions, painstakingly outline how Defendants engaged in a campaign at Phase II of the Exam to ensure that Plaintiffs' test results would not qualify them for promotion, despite Plaintiffs' relatively high scores — particularly Mrazek — obtained during Phase I. However, Plaintiffs' causes of action under procedural process is fatally flawed because entitlement to relief in this regard requires them to demonstrate, as a

---

[5]     According to Plaintiffs, including Sgt. Linck was critical because he would have provided positive reviews on Plaintiffs' evaluations.

threshold matter, that their right to be promoted fairly is a "property right" under the federal Constitution.  No matter how much "evidence" Plaintiffs can produce on this summary judgment motion to show manipulation, Plaintiffs have not first established a property right to which constitutional protection applies; thus, their procedural due process claims necessarily fail.

It is beyond dispute that to prevail on a procedural due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-140 (3d Cir. 2000); *see Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006).  In the procedural due process jurisprudence, a plaintiff must show that the interest of which he was deprived, is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property." *Eggert v. Bethea*, 625 Fed. Appx. 54, 56 (3d Cir. 2015) (citations omitted).  Having established that right, a plaintiff then must demonstrate that the procedures available to him did not provide "due process of law." *Id.*  Importantly, whether there is an interest sufficient to trigger the protection of the Fourteenth Amendment is an issue of law to be decided by courts.  *Clark v. Twp. of Falls*, 890 F.2d 611, 617 (3d Cir. 1989).

Of course, the constitution does not protect every trivial property interest; rather, to qualify as a protected interest, "a person clearly must have more than an abstract need or desire [for that interest].  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of

entitlement to it." *Id.* In that regard, to satisfy the first prong of a procedural due process property claim in this case, Plaintiffs must have a legitimate, more than *de minis*, property interest to a fair promotional process. *See Bd. of Regents of State Colls v. Roth*, 408 U.S. 564, 577 (1972).

"Legitimate claims of entitlement may be created expressly by state statute or regulation or may arise from government policies or 'mutually explicit understanding' between a government employer and employee." *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 809 (3d Cir. 1991) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)). Put differently, "[p]roperty interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understanding that secure certain benefits and that support claims of entitlement to those benefits.'" *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007)(quoting *Bd. of Regents*, 408 U.S. at 577).

Here, it is important to first point out that Plaintiffs readily concede that "a government employee does not have a property right in a promotion because the employee would not have a 'legitimate expectation of entitlement' to such a promotion." Pl. Opp., p. 5. Instead, Plaintiffs claim they have a legitimate expectation that the promotional process would afford them the rights set forth in the Exam Policy, such that the process itself should qualify as a constitutionally protected property interest. In so arguing, Plaintiffs draw their purported "entitlement" from New Jersey statutes and the Township's Resolutions governing the promotion process. First, Plaintiffs point to N.J.S.A.

40A:14-129, which provides that in non-civil service jurisdictions, "a promotion of any member or officer of the police department or force to a superior position shall be made from the membership of such department or force."  Further, "[d]ue consideration shall be given to the member or officer so proposed for the promotion, to the length and merit of his service and preference shall be given according to seniority in service."  *Id.*   Next, to expand upon the "due consideration" language, Plaintiffs cite the Township Resolutions that adopted the Exam policy.  In that regard, Plaintiffs contend that the Resolutions were passed to provide a fair and transparent promotion system so that officers, such as Plaintiffs, seeking a promotion are given a fair opportunity.

I stress that Plaintiffs' due process claims are solely based on their insistence that these statute and Resolutions create a constitutionally protected property interest.  However, Plaintiffs' argument is neither novel nor unique, because the Third Circuit has squarely addressed an identical position advanced by plaintiff-officers in *Kaminski v. Twp. of Toms River*, 595 Fed. Appx. 122 (3d Cir. 2014).[6]  In that case, the plaintiffs were police officers who successfully passed a promotion exam but were ultimately not selected for promotion by their municipal employer. *Id.* at 125-26. The plaintiffs sued the municipal employer for violation of their procedural due process rights (among other claims), alleging that they "were deprived of a fair, transparent promotional process and were

---

[6]   I note that Plaintiffs' counsel, Mr. Frost, in this case, also represented the plaintiffs in *Kaminski*.  As such, there is no doubt that Mr. Frost is aware of that Third Circuit's decision, which affirmed the dismissal of his clients' due process claims in *Kaminski*.

arbitrarily denied promotions in violation of due process." *Id.* at 124. Specifically, the plaintiffs alleged — just as Plaintiffs here — that they possessed a protected property interest in a "fair and unbiased promotional examination," and that the municipal employer violated this interest. *Id.* at 125.

As basis for this property interest, the *Kaminski* plaintiffs pointed to a state statute requiring the municipal defendant to give "due consideration" to promotional candidates' "length and merit of his service and preference shall be given according to seniority in service." *Id.* at 126 (citing N.J.S.A. 40A:14-129). They also pointed to Toms River's ordinance which, like the Stafford Township's Resolutions in this case, set out the promotional process for the exam. *Id.*

In rejecting that these provisions created a protected property interest in a "fair and unbiased promotion examination", the Third Circuit reasoned:

> Plaintiffs seize on the "due consideration" language in the statute and ordinance, and argue that the ordinance "provides specific rules intended to provide a fair and transparent promotional system." They also rely on language requiring that "due consideration" be given a candidate's "merit of service." The statute and ordinance do set out certain requirements, including that merit of service be considered. But plaintiffs have, without support, extrapolated a general intent that the process be "fair and transparent," and argue from this premise that they have an interest in a host of other characteristics that they contend the process requires. They do not provide authority for why the language in these provisions must be read to include the features they want, or, more generally, for why their expectation that the process would include those features was anything but unilateral.

*Id.* Ultimately, the court held that these provisions "do not impose general requirements on the [promotional] process beyond what they actually say, and surely do not confer an entitlement to a promotional examination with features amounting to plaintiff's concept of what is 'fair.'" *Id.*

Here, it is clear to this Court that *Kaminski* disposes of Plaintiffs' arguments supporting their procedural due process claims.  Indeed, like in *Kaminski*, Plaintiffs raise identical New Jersey state statutory authority, and instead of Toms River, Plaintiffs rely on similarly worded Resolutions of Stafford Township.  These authorities do not elevate Plaintiffs' promotion process to a protected property interest.  While the Township's Resolutions set forth some requirements that Defendants must follow in conducting the promotional process,[7] I am not convinced, just as the Third Circuit was not, by Plaintiffs' position that the cited provisions must be read to create a constitutional requirement of "fairness" in the promotional process, particularly since, other than general assurances of fairness and transparency, the Exam Policy did not specifically outline any methods to ensure a "fair" process, *see infra*, p. 20.

To undercut the value of *Kaminski* to this case, Plaintiffs inexplicably claim that because *Kaminski* is an unpublished district court case, it has no precedential value.  While the Third Circuit's decision in *Kaminski* is unpublished, the circuit nevertheless affirmed the district court's dismissal of the procedural due process claims there.  Because the facts and legal issues raised in *Kaminski* are strikingly similar to this case, even if the Third Circuit's

---

[7]     Certain exam procedures were highlighted by Plaintiffs on this motion; for example, the criteria that the supervising officers should apply when ranking each candidate, and the factors that Chief Giberson should examine when he conducts his review.  In the context of "property interest," the Third Circuit was clear in *Kaminski*, that those procedures "do not create an interest in a host of other characteristics that [Plaintiffs] contend the promotion process requires." *Kaminski*, 595 Fed. Appx. at 126.

decision is not technically binding, it is highly persuasive.  In fact, at least two district court decisions have very recently followed the Third Circuit's guidance in *Kaminski* and found that both public employment policies or contracts that set forth specific criteria for promotion and N.J.S.A. 40A:14-129, cannot serve as the basis for a federally protected property interest in the general fairness of a process implemented for promotion purposes.  *See Mendez v. Port Auth. of N.Y. & N.J.*, No. 14-7543, 2016 U.S. Dist. LEXIS 42157, at *22-23 (D.N.J. Mar. 30, 2016); *Otero v. Port Auth. of N.Y. & N.J.*, No. 14-1655, 2016 U.S. Dist. LEXIS 43332, at *25-26 (D.N.J. Mar. 31, 2016)(concluding that an employment contract in conjunction with N.J.S.A. 40A:14-129, does not "establish a protected property right in the right to a fair and unbiased promotional process.").   Other than the argument that the district court's decision in *Kaminski* is not binding, Plaintiffs put forth no other arguments, legal or otherwise, to distinguish this case from either the district court's decision or, more importantly, the circuit's affirmance in *Kaminski*.

Nonetheless, instead of relying on decisions in this circuit, for support, Plaintiffs cite to an out-of-circuit district court case, *Firefighters United For Fairnes v. City of Memphis*, 362 F.Supp. 2d 963, 971 (W.D. Tenn. 2005).  In that case, the court held that "plaintiffs do have a property interest in the mutually held expectation that their [promotion exams] will be graded fairly and accurately, and that the tests will be a major factor in the City's promotional decision."  *Id.* at 971.  However, what makes *Firefighters* distinguishable from the case here is that there were explicit findings by the *Firefighters* court that the

municipal employer agreed to maintain specific testing and grading procedures, including videotaping and transcribing interviews, preserving the anonymity of interview graders, and considering candidates' specific concerns with their initial grading. *Id.* at 967. In that respect, the court held that the municipal employer had expressly "ensured the reliability of each single assessor's scoring . . . and therefore was certain that the assessor was qualified to render a fair and accurate score . . . ." *Id.* Those assurances by the municipal employer, the court found, were sufficient to create a protected property right for the plaintiff-employees.

Unlike the explicit assurances of procedural accuracy and reliability made by the employer in *Firefighters*, the New Jersey statutory provision and the Township's Resolutions cited by Plaintiffs, here, contain no references to any specific procedures put in place — like those in *Firefighters* — in order to maintain a fair and accurate promotion process. Rather, like the plaintiffs in *Kaminski*, Plaintiffs, here, seek to extrapolate assurances of fairness from general statutory and resolution language where no such explicit assurances exist. Moreover, even if *Firefighters*' legal determination on procedural due process contradicts *Kaminski* — which it does not — the Third Circuit's more recent decision is obviously more persuasive than an out-of-circuit district court's findings.

Accordingly, I find that Plaintiffs have failed to show that their entitlement to a fair promotion process is a constitutionally protected property interest. Because my decision is confined to the threshold issue whether there is a

protected interest, I do not reach the question whether Plaintiffs were afforded proper due process, nor do I need to discuss Defendants' argument that New Jersey provides an adequate "post-depravation" remedy for the procedural due process claim that is the subject of this suit.  In conclusion, summary judgment is granted as to Count II, the procedural due process claim against Chief Giberson, in both Complaints.  Similarly, summary judgment is appropriate on Count I in both complaints, which assert a *Monell* claim against the Township based on allegations of procedural due process violations, because Plaintiffs have failed to show an underlying constitutional injury.  *See Marable*, 176 Fed. Appx. at 283.

### B. Substantive Due Process

Plaintiffs' substantive due process claim in Counts I and II of both complaints are similarly dismissed.[8]  In their substantive due process claim against Chief Giberson and the Township, Plaintiffs advance the same violation of the property interest discussed, *supra*.  However, in contrast to procedural due process, substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Beckett v. Department of Corrections,* 981 F. Supp. 319, 331 (D. Del. 1997)(citing *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). A

---

[8]     I note that Plaintiffs, in their Complaints, do not make clear whether they are asserting a substantive due process claim in Counts I and II.  It is only in their opposition brief that they submit such a cause of action was pled.  As a result, little has been pled in their Complaints regarding the factual support for substantive due process.  Nor have Plaintiffs devoted much in their opposition — as opposed to their procedural due process arguments — to defeat summary judgment on this claim.

property interest protected by the substantive due process clause may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 124 (3d Cir. 2000).

"[F]or a property interest to be protected for purposes of substantive due process, it must be 'fundamental' under the United States Constitution." *Hill*, 455 F.3d at 235. Because state-law employment rights "bear[] little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution," courts generally refuse to find fundamental property rights in the employment context. *Nicholas*, 227 F.3d at 140 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229-30 (1985) (Powell, J., concurring)).

Here, as discussed above, each of the Plaintiffs' claimed property rights — the right to a fair promotional process — arise out of the Township's Resolutions and related New Jersey employment law, i.e., N.J.S.A. 40A-15-129.  Because such claimed employment-related rights regarding promotion "bear little resemblance to the fundamental interests" which enjoy substantive due process protections, I have no basis to find that the rights are in fact "fundamental." *See id.* Accordingly, the Court dismisses Plaintiffs' substantive due process claims. *See Otero,* 2016 U.S. Dist. LEXIS 43332 at *33 (dismissing the plaintiff's substantive due process claim based on a fair promotion process); *Mendez*, 2016 U.S. Dist. LEXIS at *28-29 (same); *McGovern v. City of Jersey City*, No. 98-5186, 2005 U.S. Dist. LEXIS 38644, 2006 WL 42236, at *14 (D.N.J. Jan. 6, 2006)

(dismissing plaintiff's substantive due process claim "in connection with the issues of wage parity, pension, overtime, promotion to staff Sheriff's Sergeant position, and denial of transfer requests" because those rights were not deemed "fundamental" under Fourteenth Amendment).

Accordingly, the substantive due process claims in Counts I and II of both Complaints against the Township and Chief Gierbson are dismissed.  Because I have granted summary judgment on the substantive and procedural due process claims, the Complaint filed by plaintiffs Smith and McVey in Civil Action No.: 14-5945(FLW), is dismissed in its entirety.  The only remaining causes of action on this motion are Mrazek's First Amendment retaliation claims in Counts III and IV of Civ. Action No. 13-1091(FLW), against the Township and Chief Giberson, respectively.

## III.   First Amendment Retaliation against Chief Giberson[9]

### A. Constitutionally Protected Conduct

In Count IV of his Complaint, Mrazek brings a First Amendment retaliation claim against Chief Giberson, alleging that the Chief manipulated Mrazek's exam scores because he engaged in union activities.  Defendants argue that summary

---

[9]     Mrazek sues Chief Giberson in his official and individual capacities. Mrazek's claim against Chief Giberson in his official capacity is dismissed, because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502 U.S. 21 (1991).  In that regard, a suit against the Chief of Police in his official capacity is akin to a claim against the police department and, in turn, the municipality.  *See Bonenburger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997); *Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir. 2004).  Thus, summary judgment is granted as to the official-capacity claims against Chief Giberson.

judgment is appropriate because Mrazek has failed to show that the activities in which he engaged were protected under the First Amendment.

To bring a First Amendment retaliation claim, a plaintiff must establish the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3rd Cir. 2006). Here, Defendants argue that Mrazek has failed to meet the first and third elements of the test.

In the First Amendment speech context, as a threshold matter, a public employee plaintiff must point to certain speech for which he was retaliated against by persons acting under color of state law. In deciding whether the public employee's speech is protected, that employee's First Amendment right to speak freely on matters of public concern is balanced against the efficient operation of the workplace. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). In that regard, the important distinction to be made regarding constitutional protection is between speech related to personal interest and speech related to matters of importance to the community. *See McGreevy v. Stroup*, 413 F.3d 359, 365 (3d Cir. 1995). Indeed, "[i]f the employee's speech relates only to his or her personal interest, the First Amendment does not protect the speech." *Borden v. School Dist. of the Twp. of East Brunswick*, 523 F.3d 153, 168 (3rd Cir. 2008). This is the so-called "public concern" test.

Here, Mrazek's First Amendment claim is premised on two separate underlying union-related activities.  *See* Compl.,¶ 145.  First, Mrazek contends that he was subject to retaliation by Chief Giberson because of Mrazek's role as the president of the PBA.  Second, Mrazek avers that he was targeted by the Chief because Mrazek spoke out against the Township and the previous mayor.  Without focusing on Mrazek's first basis for retaliation, Defendants argue that Mrazek's comments made against former Mayor John McMenamin and former Chief Conroy's decision to lay off police officers as a result of budgetary constraints, *inter alia*, do not address a matter of public concern, and therefore, they are not protected speech.[10]  However, Mrazek has not directly addressed Defendants' argument on this point; rather, Mrazek claims that Defendants retaliated against him for conducting day-to-day union activities in his capacity as the PBA President.  *See* Pl. Opp., p. 24 ("In the instant action, Plaintiff Mrazek's affiliation with the union, and his grievances on behalf of the union members, caused him to be retaliated against.").  Therefore, I will construe this omission as Mrazek's election to abandon his First Amendment speech claim insofar as it relates to his comments made in 2010.

---

[10]   Because I do not address whether the alleged comments are protected speech, I will only briefly recount the background that gave rise to this alleged incident.  In 2010 —three years prior to the Exam given in this case — the Mayor of the Township was John McMenamin and the Police Chief was Chief Conroy.  Defs' Facts, ¶ 65.  According to Mrazek, he attended a rally in 2010, against Mayor McMenamin and council of the Township concerning layoffs in the police department.  Pl. Dep., T27:13-20.  And, Mrazek made certain comments at that time directed at the Mayor and the Chief of Police, criticizing them for the layoffs.  *See id.* at T25:24 – T28:2; T30:5 – T3:3.

The issue whether Defendants retaliated against Mrazek on the basis of his position as the Union President, warrants a separate legal analysis.  Mrazek argues that as Union President, he advocated on behalf of the union membership with the Police Department, often to the displeasure of the administration.  In that regard, Mrazek's union activities as the President are not centered on his personal grievances, and were not otherwise motivated to enhance his own employment conditions.  Thus, the protected conduct Mrazek raises is his constitutional right to associate.

Indeed, the First Amendment protects not only the right to speech, but it also grants all citizens, including public employees, the right to freely associate with others without fear of retaliation. U.S. const. amend. I; *Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979) (per curiam) ("The public employee surely can associate ... freely ..., and he is protected by the First Amendment from retaliation for doing so.").  As the Supreme Court has explained:

> We have recognized a First Amendment right to associate for the purpose of speaking, which we have termed a "right of expressive association." *See, e.g., BSA v. Dale*, 530 U.S. 640, 644 (2000). The reason we have extended First Amendment protection in this way is clear: The right to speak is often exercised most effectively by combining one's voice with the voices of others. *See Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). If the government were free to restrict individuals' ability to join together and speak, it could essentially silence views that the First Amendment is intended to protect. [Id.]
>
> *        *        *
>
> [W]e have held laws unconstitutional that require disclosure of membership lists for groups seeking anonymity, *Brown v. Socialist*

> *Workers '74 Campaign Comm.*, 459 U.S. 87, 101-102 (1982), or
> impose penalties or withhold benefits based on membership in a
> disfavored group, *Healy v. James*, 408 U.S. 169, 180-184 (1972).
> Although these laws did not directly interfere with an organization's
> composition, they made group membership less attractive, raising
> the same First Amendment concerns about affecting the group's
> ability to express its message.

*Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 68-69

(2006).

Based on that underlying constitutional principle, it is well-settled that

First Amendment protections extend to the right to associate with a union. *See*

*Suppan v. Dadonna*, 203 F.3d 228, 237 (3d Cir. 2000); *Bradshaw v. Twp. of*

*Middletown*, 296 F. Supp. 2d 526, 544 (D.N.J. 2003), *aff'd*, 145 Fed. Appx. 763

(3d Cir. 2005); *Glass v. Snellbaker*, No. 05-1971(JBS), 2007 U.S. Dist. LEXIS

43137, at *11-12 (D.N.J. Jun. 14, 2007)(holding that "[p]laintiff's speech and

conduct with the union are protected by the First Amendment right of

association[.]").  "Plainly[,] efforts of public employees to associate together for

the purpose of collective bargaining involve associational interests which the first

amendment protects from hostile state action." *Labov v. Lalley*, 809 F.2d 220,

222-23 (3d Cir. 1987); *Suppan*, 203 F.3d at 230-31, 236 (recognizing that First

Amendment forbids government from retaliating against public employees for

engaging in collective bargaining); *Robb v. City of Philadelphia*, 733 F.2d 286,

295 (3d Cir. 1984) (holding allegation that defendants retaliated against plaintiff

for "exercis[ing] his rights of association through participation in his labor union

… sets forth the bare bones of a claim for which relief may be granted");

*McGrogan v. SEPTA*, 2002 U.S. Dist. LEXIS 13067, No. 01-1342, 2002 WL

1586979, at *2 (E.D. Pa. July 19, 2002) (acknowledging that retaliation against public employee for participating in union election is forbidden by First Amendment); *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006); *Michalesko v. Freeland Borough*, No. 13-2634, 2015 U.S. Dist. LEXIS 86071, at *16 (M.D. Pa. Jul. 2, 2015).

Put differently, "retaliation against public employees solely for their union activities violates the First Amendment." *Clue v. Johnson*, 179 F.3d 57, 60-1 (2d Cir. 1999)(explaining that "activities on behalf of a union faction that necessarily entail a substantial criticism of management raise matters of public concern . . . ."); *Service Employees Int'l Union, AFL-CIO v. County of Butler, Pa.*, 306 F. Supp. 1080, 1082 (W.D. Pa. 1969) (citing *Thomas v. Collins*, 323 U.S. 516 (1945))("Union membership is protected by the . . . First . . . Amendment[].").[11]

---

[11] The circuits are divided whether the Supreme Court's First Amendment "public concern" test — utilized in a freedom of speech claim by a public employee — should apply in the context of freedom to associate.   Five circuits have adopted the public concern requirement for freedom of association claims and three have not. *See Hudson v. Craven*, 403 F.3d 691 (9th Cir. 2005) (applying the public concern test to hybrid speech/association claims); *Cobb v. Pozzi*, 363 F.3d 89, 102-103 (2d Cir. 2004) (applying the public concern test to association claims); *Edwards v. City of Goldsboro*, 178 F.3d 231, 249-50 (4th Cir. 1999) (same); *Griffin v. Thomas*, 929 F.2d 1210, 1214 (7th Cir. 1991) (same); *Boals v. Gray*, 775 F.2d 686 (6th Cir. 1985) (same). *But see Breaux v. City of Garland*, 205 F.3d 150, 157 n.12 (5th Cir. 2000) (not applying the public concern test to association claims); *Hatcher v. Bd. of Pub. Educ. and Orphanage*, 809 F.2d 1546, 1558 (11th Cir. 1987) (same); *Shrum v. City of Coweta*, 449 F.3d 1132, 1139 (10th Cir. 2006) (same).  Unfortunately, the Third Circuit has not definitively ruled on this precise issue, albeit the court has certainly acknowledged that such circuit split exists.  *See Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 400 (3d Cir. 1992); *Justice v. Danberg*, 571 F. Supp. 2d 602, 611 (D. Del. 2008).  In any event, this issue need not be resolved in the present case.  Regardless whether the public concern requirement applies to Mrazek's collective bargaining activities, I find that the union organizing activities forming the basis of a First Amendment retaliation claim touch upon a matter of public concern.  *See*

Accordingly, as to the first element, I find that Mrazek has sufficiently demonstrated that as the Union President, his membership in the police union is a protected association under the First Amendment.

## B. Causation

To reiterate, Defendants have not challenged the sufficiency of Mrazek's proofs with respect to the second element, i.e., retaliatory action.  Indeed, failure to promote is considered retaliatory conduct in the context of a First Amendment claim.  *See Suppan,* 203 F.3d at 234 (explaining that a failure to promote or transfer is sufficiently adverse to support a First Amendment retaliation claim); *DeGroat v. Pa. DOT*, No. 08-463, 2011 U.S. Dist. LEXIS 16066, at *12 (M.D. Pa. Feb. 17, 2011). What remains is the causal link between the constitutionally protected conduct and the retaliatory action.  To establish the requisite causal connection, the plaintiff must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof, the plaintiff must show that based on the evidence gleaned from the record as a whole, the trier of the fact may infer causation. *Cooper v. Menges*, 541 Fed. Appx. 228, 232 (3rd Cir. 2013).

---

*Justice*, 571 F. Supp. 2d at 611; *Hitchens v. County of Montgomery*, No. Civ. A. 00-4282, 2002 U.S. Dist. LEXIS 2803, 2002 WL 253939, at *3 (E.D. Pa. Feb. 20, 2002); *Glass*, 2007 U.S. Dist. LEXIS 43137 at *15 n.2 (finding that "it appears that if an employer burdens or punishes the right to associate with the [union], then the employer also incidentally burdens protected rights" under the First Amendment); *Ferraioli v. City of Hackensack Police Dep't*, No. 09-2663, 2010 U.S. Dist. LEXIS 8527, at *27 ("the leadership of a labor union, and particularly one representing public employees is a matter of the community's concern.").

The plaintiff has the initial burden of showing that his constitutionally protected conduct was a "substantial" or "motivating factor" in the relevant decision.  *Suppan*, 203 F.3d at 235 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  "Once the plaintiff carries this burden, the burden shifts to the defendant to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct."  *Id.* (citations and quotations omitted).   On this concept of burden shifting, the Third Circuit has advised:

> Under *Mount Healthy*'s burden-shifting substantial-factor/same-decision framework, the plaintiff is not required to prove "but for" cause in order to warrant a judgment in his favor. In this framework, the defendants, in proving "same decision," must prove that the protected conduct was not the but-for cause. If, in proving a substantial or motivating factor, plaintiffs were required to prove but-for causation, it would be impossible for defendants to then prove that the same decision would have been made in the absence of what the plaintiffs had already shown to be the but-for cause of the decision. While but-for causation is the ultimate question, it is the defendants' burden to prove lack of but-for causation.

*Id.* at 236.

In sum, if the plaintiff sufficiently establishes that the exercise of his First Amendment rights, *e.g.*, union membership, played a substantial role in the employment decision by the employer, to avoid lability, the defendant must show that the same decision would have been made.  *Id; see Bergdoll v. City of York*, 515 Fed. Appx. 165, 170 (3d Cir. 2013); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Brown v. New Hanover Twp. Police Dep't*, No. 07-2776, 2008 U.S. Dist. LEXIS 71434, at *24-25 (D.N.J. Sep. 22, 2008).

Here, on the issue of causation, Mrazek argues that Defendants retaliated against him because he, as the Union President, engaged in certain union activities with which Defendants were displeased.  To carry his initial burden, as evidentiary support, Mrazek points to a number of transcript excerpts of deposition testimony and documents that raise an issue of fact regarding Defendant's alleged retaliatory pretext in manipulating the exam scores during Phase II of the Exam.  I will address them, in turn.

As I have described, *supra*, the Roundtable portion of the Exam was designed to allow existing supervisory staff members to submit their individual recommendation for each candidate as to twenty-three different categories.  *See* Exam Policy, Sec. B(3). Chief Giberson and other supervisors, including Sgts. Michael Guadalupe and David Johnson, and Lieutenant Thomas Dellane,[12] conducted a roundtable discussion about each candidate, including Mrazek, and they reviewed the candidates' personal files.  Plts' Facts, ¶ 45.  The Chief selected Lt. Dellane to lead and facilitate the Roundtable.  *See* Lt. Dellane Memo dated January 16, 2013, p. 1.  After all the candidates were evaluated, each evaluator ranked the candidates.   The candidates were then scored based on their rankings.

As to Mrazek's scores, he was placed number 1 after Phase I, the written portion of the Exam.  Mrazek remained in the number spot after the Assessment Center portion of Phase II.  Thereafter, however, Mrazek was rated last during

---

[12]    Other supervisors include Captain Gordon Von Schmidt, Sgt. Allen Halliday, Sgt. Herman Pharo, Sgt. James Vaughn and Sgt. Jeffery Ross.

the Roundtable portion, and Chief Giberson also ranked Mrazek last during the Chief's Review of the Exam.  When all the scores were tallied, Mrazek — who was rated number one until the Roundtable portion — came in at number 7 on the promotion list.  As such, Mrazek was not promoted.  Indeed, based in part on the compelling differences of these scores, Mrazek claims that certain supervisors, including Chief Giberson, took retaliatory actions against him for being the Union President.  Having reviewed the record in light most favorable to Mrazek, I find that there is certainly sufficient evidence for Mrazek to defeat summary judgment on this issue.

During the Roundtable evaluation process, Sgts. Guadalupe and Johnson testified at their deposition that they felt pressured to conform to the desires and opinions of Chief Giberson, Captain Von Schmidt and Lt. Dellane in scoring. Guadalupe's Dep., T17:12-T18:15; Johnson's Dep., T41:4-T42:10.   In that regard, Sgt. Guadalupe stated that he felt that these particular "higher-ups" exerted certain undue influence over him because his candidacy for Lieutenant around the same time was being reviewed by these supervisors.  *Id.* ("knowing full well that in a couple of months these same individuals who are rating or scoring the sergeants or patrolmen taking the test for sergeant are going to be doing the same for you.   And in the past I've had disagreements with administration over certain issues, and there has been definitely a negative feel and response to my disagreements.").  More specifically, as to Mrazek's scores, Sgt. Guadalupe testified:

Q.     With respect to Candidate Mrazek, were any statements made that you relied upon in scoring him?

A.     Yes.

Q.     Okay. And what statement do you recall was stated at the discussion?

A.     Well, there was a strong statement made, and it was repeated over and over again at the time about – and the words used was that [Mrazek] was a pot stirrer.

Q.     And what was your inference from . . . that statement?

A.     As it kept being repeated I believed the intent was the fact that [Mrazek] was the union president and that he was supportive of the union positions and issues within the agency, which sometimes go against policy, you know.  Not go against, but challenge policy and procedure in the agency.

That, I believe, was the intent and the inference of it; although the words union and PBA were never said, that's the inference I took.

Q.     and did that influence – those comments influence your grading of officer Mrazek?

A.     Yes.

*       *       *

A.     . . .  in my opinion there's no doubt that [Mrazek's position at the Union] was held against him during those discussions.

*Id.* at T23:15-T24:24; T39:17-24.

On this issue, Sgt. Johnson similarly remarked:

33

A.      There's a situation to [Mrazek] being the PBA president that in the past PBA presidents don't always get a fair shake on what, you know, their job is to do for the whole agency, as a PBA President.  And because it goes against administration, they feel it's negative thing against the administration.

Q.      Chief Giberson testified concerning PBA, and he also testified that [Mrazek] stirs the pot.  And [Mrazek] felt, according to Giberson, [Mrazek] felt that, yeah, I'm representing someone.  It's my duty to make this presentation for him.  Even if it's something that's adverse, I still have a duty as – as the PBA representative or president to still do it.  And I'm going to do my job even though it may be against administration or maybe it conflicts with something. Did that attitude or explanation ever came up to you in discussing what I just represented?

A.      There's always topics about the PBA president of – you know, of stirring the pot.

*      *      *

Q.      And because of that, that could have an adverse influence on him when it comes to promotion?

A.      That's correct.

Johnson's Dep., T57:11-T58:23. [13]   In fact, according to Johnson, the administration treated him in a similarly negative fashion when Johnson was

---

[13]     While Defendants failed to address these Sergeants' testimony and how that testimony affects the outcome of Defendants' summary judgement motion, I note that other supervisors at the Roundtable, such as Sgt. Vaughn, gave somewhat conflicting account of what occurred and what was said during the scoring process.  Sgt. Vaughn did not recall that Mrazek's union activity came

the President of the Superior Officers Association.  *Id.* at T59:20-22 ("Q.  Okay. And do you believe [being the SOA President] might adversely affect you in any promotional steps?  A. I'm sure it has.").

Chief Giberson, Captain Von Schmdit and Lt. Dellane, who collectively represented the Police Department's upper management during the relevant time period, all expressed, at the Roundtable, negative views about Mrazek that related to him being a "pot stirrer."  Chief Giberson wrote in his notes that he took during the Roundtable, that Mrazek was a "pot stirrer," and the Chief indicated Mrazek had "all comment[s] negative."  *See* Giberson Notes, Exh. TT, p. 4484.  Mrazek testified at his deposition that Chief Giberson informed Mrazek the reason why Mrazek received "such low evaluation scores" was because he "was stirring the pot and . . . always in the middle of controversy."  Mrazek's Dep., T31:23-T32:4.  Mrazek interpreted that statement to mean that because he was the PBA President, his promotion scores were affected.  *Id.* at T23:4-20.

Likewise, Lt. Dellane did not appear to have positive views regarding Mrazek's union position.  He, too, referred to Mrazek as a "pot stirrer" and a "rumor starter."  Dellane's Dep., T115:12-19; T116:20-T117:25.  More particularly, Lt. Dellane gave Mrazek a score of "0" on work ethic because Mrazek apparently had "very little productivity."  *Id.* at T119:1-T121-23.  Lt. Dellane testified that he referred to Mrazek as a "station queen," which meant that

---

up during the Roundtable.  *See* Vaugh's Dep., T54:22-25.  And, while Sgt. Vaughn acknowledged that the term "stirring the pot" was mentioned, he does not recall that term being related to union activity.  *Id.* at T57:18-20.  These conflicting testimony highlights the contentious factual disputes on this summary judgment motion.

Mrazek "[s]pends the vast majority of his time in the station, not on the road patrolling." *Id.*  But, as Lt. Dellane acknowledged, Mrazek, as the PBA President, had officer hours where he would remain at headquarters for union purposes, and would be excused from duty for union grievances, contract negotiations, and other union issues, which policy was set forth in the Collective Bargaining Agreement.   *See* Mrazek's Dep., T23:12-20; Lt. Dellane's Dep., T119:10-23; T121:4-23.  Consistent with the "work ethic" score, Lt. Dellane gave Mrazek zeros on three other categories: "self-initiative," "attitude," and "support of agency initiatives."   Mrazek's scores in these categories were affected by Lt. Dellane's view that Mrazek was a "pot stirrer" in the Police Department.  *See* Lt. Dellane's Evaluation Notes, Exh. V, p. 4412.

I note that both Lt. Dellane and Chief Giberson denied during their deposition that referring to Mrazek as a "pot stirrer" or "rumor starter" was based on the fact that Mrazek was the Union President.  In fact, both testified that Mrazek's union activities did not affect the manner in which the supervisors scored.  However, on this summary judgment motion, this Court cannot make any findings of fact — that role is reserved for the factfinder.  Rather, my inquiry is limited to determine whether Mrazek has sufficiently carried his initial burden to show that his union membership caused the retaliatory action, i.e., manipulation of promotion scores.  Based on my review of the record, I find that Mrazek has certainly raised a genuine issue of material fact in that regard, and a jury is entitled to make those factual determinations.

Because I find that Mrazek has met his initial burden of showing that his constitutionally protected conduct, i.e., engaging in union activities, was a "substantial" or "motivating factor" in the scoring process, in the next step of the analysis, Defendants may show that they would have reached the same decision even in the absence of the protected conduct.  The Third Circuit in *Suppan*, which is a First Amendment retaliation case based on a failure to promote, explained that Defendants' burden could be carried by showing that:

> (1) a fair evaluation by their superiors -- i.e., one in which retaliation played no role, would have ranked the plaintiffs sufficiently low on the list that they would not be contenders for any promotions that would be made; or
>
> (2) a fair evaluation by those supervisors would have resulted in the same decision . . . not to promote anyone; or
>
> (3) assuming promotions would have been made, a fair evaluation by those supervisors would have resulted in the Police Chief's selecting other contenders.

*Suppan*, 203 F.3d at 237.  However, Defendants have largely ignored this aspect of Plaintiffs' First Amendment claim; they have failed to put forth any arguments, legal or factual, or point to any evidence that would tend to show that Mrazek would have scored the same even if he were not the Union President.  Indeed, even if Defendants relied on certain testimony that Mrazek's scores were not affected by his union membership, summary judgment on Mrazek's First Amendment claim would still be inappropriate because there are numerous factual disputes.[14]

---

[14]     Defendants argue that Mrazek is not entitled to seek punitive damages in connection with his First Amendment retaliation claim against Chief Giberson

### C.    Qualified Immunity

Finally, Chief Giberson argues that he should be entitled to qualified immunity on Mrazek's First Amendment claim.  "Public officials are entitled to qualified immunity unless their conduct violated a clearly established constitutional right." *Goodwin v. Conway*, No. 15-2720, 2016 U.S. App. LEXIS, at *10 (3d Cir. Sep. 12, 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Qualified immunity shields government officials from lability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burden of costly, but insubstantial lawsuits.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  However, government officials performing discretionary functions are liable only if "their conduct does not violate clearly established statutory or constitutional rights . . . ." *Id.*  Even in cases where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Thus, to determine whether qualified immunity is appropriate, courts engage in a two-pronged inquiry: "(1) whether the plaintiff has shown the violation of a constitutional right, and (2) whether the right was 'clearly

---

solely because Mrazek has failed to show a constitutional violation.  However, since I denied Defendants' summary judgment motion on that claim, I reject Defendants' only basis to strike Mrazek's relief in the form of punitive damages.

established' at the time of the official conduct."  *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

Here, Mrazek's theory for liability against Chief Giberson is premised upon certain retaliatory actions taken against Mrazek for Mrazek's association with his union.  In that light, as to the first prong of the qualified immunity analysis, Chief Giberson cites solely to a portion of Mrazek's deposition and argues that Mrazek has no evidence that Chief Giberson was involved in deciding and/or manipulating the promotional exam grades.  That portion of the deposition only revealed Mrazek's lack of knowledge whether Chief Giberson knew the candidates' scores heading into the Roundtable or the Chief's Review phases of the Exam.  However, a lack of knowledge of the scores on the Chief's part is not pertinent to the question of whether Chief Giberson harbored ill-will towards Mrazek merely because of Mrazek's association with the Union, and correspondingly, whether the Chief retaliated against Mrazek because of Plaintiff's union membership.  On these specific issues, I have already determined, *see supra*, that numerous factual disputes exist as to the Chief's substantial motivating factor in scoring Mrazek last during the Roundtable and the Chief's Review phases of the Exam.  Therefore, Chief Giberson has failed to meet the first prong of qualified immunity, since there is a genuine issue of material fact as to whether a violation of Mrazek's First Amendment right had occurred.

As to the "clearly established" prong of the qualified immunity analysis, courts must be mindful that they are "not to define clearly established law at a

high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (citations omitted). Instead, courts "must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015). In this case, Mrazek alleges that Defendants retaliated against him for associating with his union by manipulating his exam scores such that he would be ineligible to be promoted. However, the parties have not properly briefed the inquiry whether such a right was clearly established at the time the act was committed.[15]

In order for a federal right to be clearly established, there must be applicable precedent from the Supreme Court, or "'a robust consensus of cases of persuasive authority' in the Court of Appeals." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (per curiam) (quoting *City & Cnty. of S.F. v. Sheehan*, 135 S.Ct. 1765, 1778 (2015)). Although a plaintiff does not have to produce "a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S.Ct. at 2083 (citations omitted) (emphasis added). Stated another way, a court need not find that "the very action in question has previously been held unlawful," *Anderson*, 483 U.S. at 640, but rather conclude that "the firmly settled state of the law, established

---

[15]    In his attempt to show that such a right is clearly established, Mrazek relies on *Baldassare v. New Jersey*, 250 F.3d 188 (3d Cir. 2001) and similar cases; however, those cases are inapposite because the decisions dealt with jurisprudence in the context of speech rights under the First Amendment. Here, as I have defined the constitutional violation, Mrazek's alleged constitutional right emanates from his freedom to associate under the First Amendment.

by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right." *Spady*, 800 F.3d at 639 (citing *Taylor*, 135 S.Ct. at 2044 and al-*Kidd*, 131 S.Ct. at 2083).

Here, Chief Giberson has not advanced any contention with regards to whether Mrazek, as the Union President, had a clearly established constitutional right, at the time of the official conduct, to be free from retaliatory action taken because of his membership in the Union.  And, since the Court has discounted Mrazek's reliance on *Baldassare*, neither party adequately addresses the element of "clearly established." Therefore, Defendants' motion for summary judgment with regard to qualified immunity is denied. However, Defendants may submit supplemental briefing on this issue within 10 days from the date of the Order accompanying this Opinion.  Mrazek may respond within 10 days after receiving Defendants' submission.

## IV.   *Monell* **Claim against the Township**

In Count III, Mrazek brings a claim against the Township for retaliatory acts committed by Chief Giberson under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978).  In particular, Mrazek submits that because Chief Giberson is the final policymaker for the Police Department, the retaliatory decision made by Chief Giberson against Mrazek on the account of his union membership constitutes an unwritten policy.  On the other hand, Defendants contend that Mrazek may not premise his *Monell* claim based upon the act of the Township's employee, i.e., Chief Giberson; rather, Defendants

maintain that Mrazek must identify a policy or custom of the Township itself that caused him injuries.

Under *Monell*, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658). *Monell* thus created a "two-path track" to municipal liability, depending on whether a § 1983 claim is premised on a municipal policy or custom. *Id.*; *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

However, in this case, Mrazek claims that Chief Giberson was acting as a "policymaker" on behalf of the Township. The parties have failed to properly address this point. To satisfy the first element of a *Monell* claim, as an initial burden, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). The identification of policymaking officials is a question of state law. *St. Louis v. Praprotnick*, 485 U.S. 112, 124 (1988). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986)) (plurality opinion). "Thus the identification

of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense. The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms." *St. Louis,* 485 U.S. at 124-25.

On this record, I cannot resolve this threshold question of law. Defendants dispute that Chief Giberson's decisions can bind the Township for *Monell* purposes. However, neither party has briefed the issue whether, as a matter of state law, the chief of police, i.e., Chief Giberson, is a policy-maker for *Monell* purposes in this context of this case. Accordingly, I will deny Defendants' motion for summary judgment on Mrazek's *Monell* claim. *See, e.g., Mack v. Town of Wallkill,* 253 F. Supp. 2d 552, 563 (S.D.N.Y. 2003)(denying summary judgment because an outstanding issue related to whether the chief of police is a policymaker for the purposes of *Monell*); *Buoniconti v. City of Phila.,* 148 F. Supp. 3d 425, 437 (E.D. Pa. 2015); *Scalpi v. Town of East Fishkill,* No. 14-2126, 2016 U.S. Dist. LEXIS 24697, at *20-21 (S.D.N.Y. Feb. 29, 2016). Because this initial burden falls on Mrazek, he shall submit a supplemental brief on this issue within 10 days from the date of the Order accompanying this Opinion. Defendants may respond within 10 days after receiving Mrazek's submission.[16]

---

[16]    Defendants additionally argue that Mrazek failed to comply with the notice requirements of the New Jersey Tort Claims Act. However, since Mrazek has conceded that he has not asserted any state law claims, the Act does not apply here.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is denied in part and grant in part.  Summary judgment is granted as to the due process claims asserted by plaintiffs Smith and McVey; their complaint is dismissed in its entirety.  Defendants' motion is granted as to plaintiff Mrazek's due process claims in Counts I and II of his Complaint; however, summary judgment is denied as to Mrazek's First Amendment claims in Counts III and IV. In addition, Defendants are directed to submit supplemental briefing on qualified immunity within 10 days from the date of the Order accompanying this Opinion. Mrazek may respond within 10 days after receiving Defendants' submission.  On the issue of Chief Giberson's authority under state law as a policymaker for *Monell* purposes, Mrazek is directed to submit supplemental briefing within 10 days from the date of the Order accompanying this Opinion.  Defendants also have 10 days to respond after receiving Mrazek's submission.


DATE:  September 28, 2016


/s/           Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.